# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

N° 08-CV-03062 (JFB)

---

HERNAN GUERRERO,

Petitioner,

VERSUS

LEO PAYANT,
SUPERINTENDENT,
MOHAWK CORRECTIONAL FACILITY,

Respondent.

---

**MEMORANDUM AND ORDER**
June 21, 2010

---

JOSEPH F. BIANCO, District Judge:

Hernan Guerrero (hereinafter, "Guerrero" or "petitioner") petitions this court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, to vacate his conviction entered on November 22, 2004, in the County Court of the State of New York, County of Suffolk (the "trial court"), for sexual abuse in the first degree (N.Y. Penal Law § 130.65(1)) and aggravated sexual abuse in the second degree (N.Y. Penal Law § 130.67(1)(a)). Petitioner was sentenced, as a violent felony offender, to concurrent terms of five years' incarceration for the first count and eight years for the second count, with five years of post-release supervision.

Guerrero challenges his conviction on nine grounds. Specifically, petitioner asserts that: (1) the evidence failed to establish that the complainant suffered physical injury; (2) the prosecution failed to prove petitioner's guilt beyond a reasonable doubt; (3) the trial court committed reversible error when it permitted a photograph of the complainant wrapped in a blanket and wearing a hospital gown to be admitted into evidence; (4) the trial court improperly denied defense counsel's request for a missing witness charge; (5) the trial court violated the procedures established in *Batson v. Kentucky* when it failed to require the prosecution to give a race-neutral explanation for her removal of a Hispanic juror; (6) defense counsel rendered ineffective assistance of counsel by failing to remove two jurors from the panel who allegedly could not be fair and impartial; (7) the sentence imposed on petitioner was harsh and excessive; (8) the trial court improperly denied petitioner's New York Criminal Procedure Law Section 330.30

motion; and (9) the trial court erroneously allowed the alternate juror to sit with the panel of jurors at one point during deliberations. For the reasons set forth below, the petition is denied in its entirety on the merits.

## I. Background

### A. Underlying Facts

The Court has adduced the facts below from the instant petition and the state court record in this case.

K.C. (hereinafter "K.C.," "victim" or "complainant") was an employee of the Marriott Islander Hotel in Suffolk County (hereinafter "hotel" or "Marriott"). (Tr.[1] 11/15/04 at 84.) On February 26, 2003, when K.C. was nineteen-years old, she was working as a lifeguard at the hotel in order to cover her friend's shift. (*Id*. at 84-86.) That night, K.C.'s friend, Rachel Stancati (hereinafter "Stancati"), brought her dinner and they ate together by the pool. (*Id*. at 89.)

Later that evening, at around 10:00 p.m., K.C. left the pool area and went to the engineering office to smoke a cigarette. (*Id*. at 90.) When she arrived at the engineering office, she noticed Guerrero sitting in the workshop area of the engineering office watching a pornographic movie. (*Id*. at 92-93.) K.C. heard Guerrero change the channel when hotel banquet supervisor, Andrew Meola (hereinafter "Meola"), entered the engineering office. (*Id*. at 94.) Guerrero turned the television back to the pornographic channel after Meola left the engineering room. (*Id*.)

While K.C. was standing in between the office and workshop area, Guerrero asked her if she would engage in sexual activity with him

and questioned her about her sexual history. (*Id*. at 95.) K.C. told Guerrero that she would not have sex with him because he was married, he was old, and because she had a boyfriend. (*Id*. at 95-96.) K.C. then went to flick her cigarette butt in the trash can in the workshop area when petitioner grabbed her and pulled her onto his lap. (*Id*. at 96.) He then stuck his hands down K.C.'s pants and touched her vagina. (*Id*. at 96-98.) K.C. broke free and ran for the door, but petitioner grabbed her by the wrists and pulled her back into the room with her arms behind her back. (*Id*. at 98.) Guerrero then forced K.C. to touch his penis, which was exposed through his open zipper. (*Id*. at 99-100.) K.C. broke free again and tried to run for the door, but Guerrero pulled her hands off the door and locked it. (*Id*. at 100.) Guerrero then pushed her against the door and pulled her pants down. (*Id*. at 100-01.) Guerrero then proceeded to insert his fingers into K.C.'s vagina a second time. (*Id*. at 101.) K.C. testified that "it hurt" when petitioner put his fingers inside her vagina and that it felt like "he punctured" her. (*Id*.) After inserting his fingers into K.C., Guerrero attempted to insert his penis into K.C.'s vagina. (*Id*. at 102.) K.C. testified that she was screaming and telling him to stop. (*Id*.) K.C. then kicked and pushed Guerrero off of her, unlocked the door, and ran out of the engineering room while pulling up her clothes. (*Id*. at 106-07.)

Stancati had stayed by the pool area when K.C. went for her cigarette break. (Tr. at 909.) When Stancati realized that K.C. had been gone for a long time, she went looking for her at the engineering office. (*Id*. at 910.) As Stancati got closer to the engineering office door, she heard K.C. yelling and saying "no." (*Id*. at 911.) Stancati started traveling down the hallway to get help when she heard the door to the engineering office open. (*Id*. at 912-13.) She saw K.C. emerge from the room "disheveled" and pulling up her clothes. (*Id*. at 913.) K.C. then told Stancati that petitioner

---

[1] "Tr." refers to the transcript of the trial proceedings in the underlying criminal action.

attacked her, put his hands on her vagina, and tried to make her touch his penis. (*Id*.)

K.C. left the engineering room area to report the assault to Meola, who was in the ballroom. (Tr. 11/15/04 at 108-09.) She then returned to Stancati, who was still by the pool area, to decide what to do next. (*Id*. at 110.) After seeing petitioner on the footbridge overlooking the pool, K.C. and Stancati went to Takir Rafiq (hereinafter "Rafiq"), a night manager at the hotel, to report the assault. (*Id*. at 112 -13; Tr. at 914-15.) K.C. was given a piece of paper to fill out, which she did not finish filling out. (Tr. 11/15/04 at 112-13.) Allison Smith (hereinafter "Smith"), an office manager at the hotel, came to the front desk to speak with K.C. (*Id*. at 114-15.) Rafiq also called Marriot general manager, Denise Skidmore (hereinafter "Skidmore"), who also came to the front desk. (*Id*. at 115.) K.C. told Skidmore about the assault. (*Id*. at 116.) Rafiq then called the police and Officer Bartholemew Fitzsimmons (hereinafter "Fitzsimmons") responded. (Tr. at 916.)

During direct examination of Rafiq by defense counsel, Rafiq testified that K.C. told him that she was sitting on petitioner's lap willingly watching a pornographic movie when petitioner tried to grab her. (Tr. 11/18/04 at 156.) However, Rafiq also testified that he did not include the fact that K.C. was sitting on petitioner's lap willingly watching a pornographic movie in the written report. (*Id*. at 158-59.) He testified that K.C. told him that when she tried to run away, Guerrero grabbed her by the arm, pulled her back, and kissed her neck, before she left the engineering room. (*Id*. at 156.) Rafiq also testified that K.C. never told him that petitioner tried to rape her, put his fingers in her vagina, had her touch his penis, or that she was in pain. (*Id*. at 163-64.) Rafiq also stated that K.C. referred to the porn as "no big deal." (*Id*. at 158-59.) He also testified that K.C. did not want to call the

police because she was parked in a handicapped spot and was also afraid that management would find out that she was smoking in the engineering room. (*Id*. at 159.)

When Officer Fitzsimmons responded, K.C. proceeded to tell Officer Fitzsimmons the details of the attack and brought him to site of the incident. (Tr. 11/15/04 at 120.) K.C. then drove herself to the precinct. (*Id*.) Stancati also drove herself to the precinct. (*Id*.) At the precinct, K.C. called her mother who also came to the precinct. (*Id*. at 122.)

After K.C.'s mother arrived at the precinct, Detective Rouff (hereinafter "Rouff") drove K.C. and her mother to the Sexual Assault Nurse Examination Center (hereinafter "SANE Center."). (*Id*. at 123.) Judith Specht (hereinafter "Specht") met K.C. and her mother at the SANE Center at around 2:00 a.m. (Tr. 11/18/04 at 11-12.) Specht conducted a complete examination of K.C. (*Id*. at 12-50.) Specht noticed a scratch on K.C.'s forearm that K.C. has not previously noticed. (Tr. 11/18/04 at 18-19.) K.C. told Specht that she experienced pain in her genitals the first time she urinated after the assault. (*Id*. at 14.) Specht also swabbed K.C.'s neck for saliva because K.C. told Specht that petitioner sucked on her neck. (*Id*. at 24-25.) When Specht examined K.C.'s genital area, she observed two oozing crescent shaped lacerations, which continued to ooze for several hours after the examination, as well as an area of redness inside the labia minora. (*Id*. at 29-31.) Specht also testified that the bottom portion of K.C.'s genitalia was sensitive to the touch. (*Id*. at 30-31.) Specht testified that this trauma was consistent with digital penetration in the last four to five hours (*Id*. at 30-31.) K.C. also testified that she experienced pain in her genital area, which she described as "intense burning" that lasted for a couple of days after the incident. (Tr. 11/15/04 at 129.)

At trial, defense counsel called Dr. Fredrick Gonzalez (hereinafter "Dr. Gonzalez"), the Chief of Obstetrics at Elmhurst Hospital Center. (Tr. at 963-1025.) He reviewed the photographs taken by Specht and the report taken at the SANE Center. (*Id*. at 987-88.) He testified that any redness observed could have been the result of sexual intercourse the night before. (*Id*.) Dr. Gonzalez also stated that he did not notice anything in the photographs that would indicate blood or bodily fluid present in the vaginal area and noted that it was uncommon for a nurse not to collect a sample of any fluid observed. (*Id*. at 973, 988.) He also testified that the lesions, which he categorized as pimples, were normal for the genital area and were circular in shape. (*Id*. at 975-76.) Dr. Gonzalez admitted that, after a forcible sexual assault, there is little to no visible injury; however, he said that, if a woman had been groped in the genital area, there would be bruising. (*Id*. at 1001-03.)

K.C. returned the precinct after the examination at the SANE Center and gave her statement to Rouff. (Tr. 11/15/04 at 127.) In addition to the testimony of K.C., Specht, and Stancati, the prosecution also offered the testimony of Jeannie Eberhard, a forensic scientist, who testified that the absence of seminal fluid on K.C.'s clothing was consistent with digital penetration. (Tr. 11/17/04 at 134.) She further testified that, although there was no evidence of saliva on the swab taken from K.C.'s neck, there could be several reasons for this, such as: there could have been an undetectable amount of saliva left at the site; the saliva could have been transferred from K.C.'s neck when it came in contact with the fabric from the blanket K.C. wore around herself at the SANE Center; or it could have been wiped away in some other manner. (*Id*. at 132-33.)

## B. Procedural History

The jury found the petitioner guilty of sexual abuse in the first degree and aggravated sexual abuse in the second degree. (Tr. at 1254.) Petitioner was sentenced to concurrent terms of five years of incarceration for the first count, and eight years' imprisonment for the second count, with five years of post-release supervision. (S.[2] 22.) The court also issued a "stay away and refrain from" order of protection in favor of K.C. until 2015. (*Id*. at 23.)

On February 3, 2005, petitioner made a motion to set aside the verdict, pursuant to New York Criminal Procedure Law Section 330.30, and, on March 10, 2005, the County Court of the State of New York, County of Suffolk, denied the motion. (Petition (hereinafter "Pet.")[3] at 4.) On March 23, 2005, petitioner directly appealed to the Appellate Division, Second Department, and raised seven issues: (1) Guerrero's conviction for aggravated sexual abuse in the second degree should be reversed as the evidence adduced at trial failed to establish as a matter of law that the complainant suffered physical injury; (2) the prosecution failed to prove Guerrero's guilt beyond a reasonable doubt; (3) the trial court committed reversible error when it permitted a photograph of the complainant wrapped in a blanket and wearing a hospital gown to be admitted into evidence because the effect of the photograph engendered sympathy for the complainant and inflamed the passions of the jury against Guerrero; (4) the trial court violated the procedures established in *Batson v. Kentucky* when it failed to require the prosecution to give a race-neutral explanation for her removal of a Hispanic juror; (5) the

[2] "S." refers to the transcript of the sentencing proceedings.

[3] "Petition" refers to petitioner's habeas corpus petition submitted to this court.

court committed reversible error when it denied defense counsel's request for a missing witness charge after the prosecution failed to call as a witness the detective who arrested Guerrero and took written statements from both Guerrero and the complainant shortly after the incident; (6) defense counsel's failure to remove two jurors who stated that they could not be fair and impartial constituted ineffective assistance of counsel and denied Guerrero a fair trial; and (7) the sentence imposed by the trial court totaling eight years was harsh and excessive and should be modified in the interest of justice. (Appellant's Brief submitted to the Supreme Court of the State of New York, Appellate Division, Second Department.) Petitioner submitted a *pro se* supplemental brief, filed on May 10, 2007, which asserted two additional claims: (1) it was reversible error for the trial court to deny Guerrero's motion to set aside the verdict, pursuant to New York Criminal Procedure Law Section 330.30; and (2) the court below committed *per se* reversible error when it permitted an alternate juror to sit with the regular panel of jurors during deliberations when the jury assembled for read backs pursuant to New York Criminal Procedure Law Sections 270.30 and 310.10. (*Pro Se* Supplemental Brief for Defendant-Appellant submitted to the Supreme Court of the State of New York, Appellate Division, Second Department.) On October 16, 2007, the Appellate Division, Second Judicial Department, affirmed petitioner's judgment and conviction. *People v. Guerrero*, 844 N.Y.S.2d 876 (App. Div. 2007). Petitioner sought leave to appeal to the New York Court of Appeals on all preserved issues.[4] The New

York Court of Appeals denied leave to appeal on January 24, 2009. 881 N.E.2d 1207 (N.Y. 2008).

On July 11, 2008, Guerrero petitioned this Court for habeas corpus relief based on the following grounds: (1) the evidence at trial failed to establish that the complainant suffered physical injury; (2) the People failed to prove petitioner's guilt beyond a reasonable doubt; (3) the trial court committed reversible error when it allowed a photograph of the complainant wrapped in a blanket and wearing a hospital gown to be admitted into evidence; (4) the trial court improperly denied defense counsel's request for a missing witness charge; (5) the trial court violated the procedures established in *Batson v. Kentucky* when it did not require the prosecution to give a race-neutral explanation for the removal of a Hispanic juror; (6) defense counsel was ineffective when it failed to remove two jurors who allegedly could not be fair and impartial; (7) the sentence imposed on Guerrero was harsh and excessive; (8) the trial court improperly denied petitioner's New York Criminal Procedure Law Section 330.30 motion to set aside the verdict; and (9) the trial court erroneously allowed the alternate juror to sit with the panel of jurors during deliberations. (Pet. at 3.)

---

[4] The letter request for leave to appeal to the New York Court of Appeals was not part of the state court record received by this Court. Accordingly, on May 7, 2010, this Court ordered that petitioner submit a copy of that letter to the Court by May 24, 2010. In response, petitioner submitted what appears to be a letter written to his attorney at the

Legal Aid Society, requesting that certain arguments be included in the leave application. Specifically, petitioner requested that his counsel include the arguments regarding insufficiency of the evidence and allowing the alternate juror to sit in the jury box after deliberations had commenced, along with the constitutional grounds raised on direct appeal. (*See* Letter from Hernan Guerrero to Kirk R. Brandt, Oct. 22, 2007.)

5

## II. Standard of Review

### A. Legal Standard

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2554. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

### III. Discussion

### A. Procedural Issues

As a threshold matter, respondent argues that several of petitioner's claims are procedurally barred from habeas review by the Court. Specifically, respondent asserts that the following claims are procedurally barred: (1) petitioner's due process rights were violated when the trial court declined to issue a missing

witness charge; (2) petitioner received ineffective assistance of counsel when his attorney failed to remove two prospective jurors who allegedly could not be fair and impartial; (3) petitioner's sentence was excessive and therefore cruel and unusual; and (4) the trial court improperly allowed the alternate juror to deliberate with the jury.[5] (Pet. at 3.) As set forth below, these claims should be deemed exhausted but procedurally barred because petitioner failed to raise them on direct appeal. In any event, even assuming *arguendo* that these claims were reviewable, they are without merit.

### 1. Failure to Exhaust

A district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), petitioner must fairly present his

---

[5] Respondent does not contest that petitioner has presented five claims to this Court that are not procedurally barred and therefore are reviewable by this Court on the merits. Those claims are: (1) the evidence at trial failed to establish that the complainant suffered physical injury as required for a conviction for aggravated sexual abuse in the second degree; (2) the People failed to prove petitioner's guilt beyond a reasonable doubt; (3) the trial court committed reversible error when it permitted a photograph of the complainant wrapped in a blanket and wearing a hospital gown to be admitted into evidence because the effect of the photograph was to engender sympathy for the complainant and inflame the passions of the jury against petitioner; (4) the trial court violated the procedures established in *Batson v. Kentucky* when it failed to require the prosecution to give a race-neutral explanation for her removal of a Hispanic juror; and (5) the trial court improperly denied petitioner's motion to set aside the verdict. The merits of these claims are discussed *infra*.

federal constitutional claims to the highest state court having jurisdiction over them. *See Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 n.3 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quotation marks omitted) (alteration in original)).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. On the contrary, to provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365-66. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye*, 696 F.2d at 191-92 (citing *Picard*, 404 U.S. at 276; *United States ex rel. Cleveland v. Casscles*, 479 F.2d 15, 19-20 (2d Cir. 1973)). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis

was substantially different from that asserted in state court." *Id.* at 192 (footnote omitted).

## 2. State Procedural Requirements

Like the failure to exhaust a claim, the failure to satisfy the state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman*, 501 U.S. at 735) (additional citations and emphasis omitted). Where the petitioner "can no longer obtain state-court review of his present claims on account of his procedural default, those claims are . . . to be deemed exhausted." *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004) (citing *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)). Therefore, for exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Keane*, 118 F.3d at 139 (quoting *Hoke*, 933 F.2d at 120).

However, "exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Coleman*, 501 U.S. at 744-51). "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Netherland*, 518 U.S. at 162 (citations omitted).

The procedural bar rule in the review of applications for writs of habeas corpus is based on the comity and respect that state judgments must be accorded. *See House v. Bell*, 547 U.S. 518, 536 (2006). Petitioner's federal claims may also be procedurally barred from habeas corpus review if they were decided at the state level on adequate and independent procedural grounds. *See Coleman*, 501 U.S. at 729-33. The purpose of this rule is to maintain the delicate balance of federalism by retaining a state's rights to enforce its laws and to maintain its judicial procedures as it sees fit. *Id.* at 730-31.

Once it is determined that a claim is procedurally barred under state rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Id.* at 750 (citations omitted). A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

## 3. Application

In the instant case, following his conviction, petitioner filed a direct appeal to the New York State Appellate Division, Second Department. In his brief to the Second Department, petitioner raised the following issues: (1) Guerrero's conviction for

aggravated sexual abuse in the second degree should be reversed as the evidence adduced at trial failed to establish as a matter of law that the complainant suffered physical injury; (2) the prosecution failed to prove Guerrero's guilt beyond a reasonable doubt; (3) the trial court committed reversible error when it permitted a photograph of the complainant wrapped in a blanket and wearing a hospital gown to be admitted into evidence because the effect of the photograph was to engender sympathy for the complainant and inflame the passions of the jury against Guerrero; (4) the trial court violated the procedures established in *Batson v. Kentucky* when it failed to require the prosecution to give a race-neutral explanation for her removal of a Hispanic juror; (5) the trial court committed reversible error when it denied defense counsel's request for a missing witness charge after the prosecution failed to call as a witness the detective who arrested Guerrero and took written statements from both Guerrero and the complainant shortly after the incident; (6) defense counsel's failure to remove two jurors who allegedly could not be fair and impartial constituted ineffective assistance of counsel and denied Guerrero a fair trial; and (7) the sentence imposed by the trial court totaling eight years was harsh and excessive and should be modified in the interest of justice. (*See* Appellant's Brief submitted to the Supreme Court of the State of New York, Appellate Division, Second Department.) Petitioner submitted a *pro se* supplemental brief, filed on May 10, 2007, which asserted two additional claims: (1) it was reversible error for the trial court to deny Guerrero's motion to set aside the verdict, pursuant to New York Criminal Procedure Law Section 330.30; and (2) the trial court committed *per se* reversible error when it permitted an alternate juror to sit with the regular panel of jurors during deliberations when the jury assembled for readbacks. (*Pro Se* Supplemental Brief for Defendant-Appellant submitted to the Supreme Court of the State of New York, Appellate Division,

Second Department.) According to respondent, in petitioner's letter to the New York State Court of Appeals he only requested review of the preserved issues.[6] Petitioner's letter request for leave to appeal to the Court of Appeals was not part of the state court record received by this Court. Although this Court ordered that petitioner submit a copy of that letter to the Court, he has only submitted a letter written to his attorney at the Legal Aid Society dated October 22, 2007, requesting that the leave application include arguments regarding the insufficiency of the evidence, the trial court permitting the alternate juror to sit in the jury box after deliberations had commenced, and the constitutional grounds raised by counsel on direct appeal. (*See* Letter from Hernan Guerrero to Kirk R. Brandt, Oct. 22, 2007.) Nonetheless, the contents of this letter do not demonstrate that these grounds were, in fact, included in the request for leave to appeal to the Court of Appeals. "The burden of proving exhaustion lies with the habeas petitioner." *Cartagena v. Corcoran*, No. 04-CV-4329 (JS), 2009 WL 1406914, at *3 (E.D.N.Y. May 19, 2009) (citing *Colon v. Johnson*, 19 F. Supp. 2d 112, 120 (S.D.N.Y. 1998)). The Court concludes that petitioner has not met that burden.[7]

Therefore, the four remaining claims asserted by petitioner before this Court were not presented to the Court of Appeals for review. Those four claims are: (1) that petitioner's due process rights were violated when the trial court declined to issue a missing witness charge; (2) that petitioner received ineffective assistance of counsel when his attorney failed to remove two prospective jurors who allegedly could not be fair and impartial; (3) that petitioner's sentence was

---

[6] The preserved issues are detailed in footnote 8, *supra*.

[7] Nonetheless, out of an abundance of caution, as discussed extensively *infra*, the Court proceeds to examine the merits of these claims.

excessive and therefore cruel and unusual; and (4) that the trial court improperly allowed the alternate juror to deliberate with the jury. The claims that petitioner now asserts were all reviewable from the record; however, these four claims were not raised on direct appeal. A petitioner for federal habeas corpus relief procedurally defaults his claim by not raising it on direct appeal. *See Graham v. Costello*, 299 F.3d 129, 133 (2d Cir. 2002). Because petitioner no longer has any state remedies available to him, which occurs when a petitioner has defaulted his federal claim in state courts, he meets the technical requirements for exhaustion. *See Coleman*, 501 U.S. at 732. Thus petitioner's claims are deemed exhausted under 28 U.S.C. § 2254(b) because petitioner no longer has remedies available in the New York State courts. However, petitioner's four claims that were not presented to the New York State Court of Appeals are procedurally barred because he did not raise them on direct appeal, even though there was a sufficient factual record to permit such review. *Hoke*, 933 F.2d at 121. When a petitioner's claims are procedurally barred, federal habeas courts also must deem the claim procedurally defaulted. *Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir. 2003) (citing *Coleman*, 501 U.S. at 735 n.1).

Once it is determined that a claim is procedurally barred under state rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 749-750 (citations omitted). A miscarriage of justice is demonstrated in extraordinary cases, for example, where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray*, 477 U.S. at 496. Here, petitioner has provided no explanation for his failure to raise these claims in his direct appeal in state court, nor has he demonstrated

that a fundamental miscarriage of justice would occur if these claims were not reviewed by the habeas court. Not only is petitioner's application devoid of any cognizable claim of actual innocence, but the evidence presented at trial clearly established petitioner's guilt beyond a reasonable doubt. Accordingly, petitioner's claims are deemed to be exhausted, but the four claims that were not presented to the New York State Court of Appeals are procedurally barred from review by this court. In any event, assuming *arguendo* that these claims are reviewable, they are all substantively without merit, as set forth *infra*.

## C. Legally Insufficient Evidence Claim

Petitioner claims that his conviction violated the Fourteenth Amendment. Specifically, he argues that there was insufficient evidence to prove his guilt beyond a reasonable doubt. (Pet. at 3.) He also argues that the evidence was insufficient to convict petitioner of aggravated sexual abuse in the second degree because the prosecution failed to establish physical injury. (*Id.*) Furthermore, petitioner argues that the trial court improperly denied his motion to set aside the verdict. (*Id.*) In the instant case, petitioner argues that his convictions were not based on legally sufficient evidence. The Appellate Division rejected this claim on the merits, holding that, viewing the evidence in the light most favorable to the prosecution, the evidence "was legally sufficient to establish the defendant's guilt beyond a reasonable doubt." *Guerrero*, 844 N.Y.S.2d at 876. Therefore, AEDPA deference applies. For the reasons set forth below, the Court concludes that the Appellate Division's ruling was not contrary to, nor an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the entire record.

### 1. Legal Standard

A petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in an application for a writ of habeas corpus. *Einaugler v. Supreme Court of the State of N.Y.*, 109 F.3d 836, 840 (2d Cir. 1997). A criminal conviction in state court will not be reversed if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1976) (emphasis in original); *see also Policano v. Herbert*, 507 F.3d 111, 115-16 (2d Cir. 2007) (stating that "[i]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt" (quoting *Jackson*, 443 U.S. at 324)); *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."). A criminal conviction will stand so long as "a reasonable mind 'might fairly conclude guilt beyond a reasonable doubt.'" *United States v. Strauss*, 999 F.2d 692, 696 (2d Cir. 1993) (quoting *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984) (internal quotation omitted)). Even when "faced with a record of historical facts that supports conflicting inferences [a court] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326).

### 2. Application

In the instant petition, Guerrero raises three legal insufficiency arguments: (1) the prosecution failed to prove petitioner's guilt beyond a reasonable doubt; (2) the evidence at trial failed to establish that the complainant suffered physical injury as required for a conviction of aggravated sexual abuse; and (3) the trial court improperly denied Guerrero's New York Criminal Procedure Law Section § 330.30 motion to set aside the verdict. (Pet. at 3.) The Court will address each claim separately.

#### a. Reasonable Doubt

Petitioner argues that the prosecution failed to prove his guilt beyond a reasonable doubt for the crimes of sexual abuse in the first degree and aggravated sexual abuse in the second degree. (Pet. at 3, 7.) Specifically, petitioner points to the conflicting testimony of the prosecution and defense witnesses regarding the events of the evening in question. (Reply at 8-9.)[8] However, the Court finds this argument to be without merit.

A habeas petitioner cannot prevail on a claim of legally insufficient evidence unless he can show that, viewing the evidence in the light most favorable to the prosecution, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Flowers v. Fisher*, 296 F. App'x 208, 210 (2d Cir. 2008) (quoting *Jackson*, 433 U.S. at 324). When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

Under New York law, "[a] person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact

---

8 "Reply" refers to petitioner's reply brief submitted to this court.

by forcible compulsion." N.Y. Penal Law § 130.65(1). A person is guilty of aggravated sexual abuse in the second degree under New York law when he "inserts a finger in the vagina, urethra, penis, rectum or anus of another person causing physical injury to such person by forcible compulsion." N.Y. Penal Law § 130.67(1)(a).

It is axiomatic that "[w]here there are conflicts in the testimony, we must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses." *United States v. Ware*, 577 F.3d 442, 447 (2d Cir. 2009). This is because the task of assessing witness credibility rests solely with the jury. *Id.* (citing *United States v. Josephberg*, 562 F.3d, 478, 487 (2d Cir. 2009)). Therefore, "the jury is free to believe part and disbelieve part of any witness's testimony . . . ." *Id.* This rule applies whether the evidence being weighed by the jury is direct or circumstantial. *Id.*

Petitioner claims that the evidence was insufficient to convict him of sexual abuse. Specifically, he relies on the testimony of the hotel night manager, Rafiq, which conflicts with the testimony offered by the prosecution regarding the incident with K.C. (Reply at 9.) Rafiq testified that K.C. never told him that she was attacked by petitioner but rather confirmed petitioner's statements to Detective Rouff that K.C. was willingly sitting on petitioner's lap watching a pornographic movie. (Reply at 9; Tr. 11/18/04 at 156, 159.) Petitioner also points to certain deficiencies in K.C.'s testimony such as: (1) that K.C.'s pants were not ripped even though she stated that they were in her statement to police; and (2) that she failed to state that she sustained a scratch during her attack as she resisted petitioner. (Reply at 9.)

However, this Court concludes that there was more than sufficient evidence during the course of the trial that would allow a rational trier of fact to find petitioner guilty of sexual

abuse beyond a reasonable doubt. K.C. testified during the trial that, without her consent, petitioner pulled her onto his lap, forced his hand down her pants, and, when she tried to break free, he restrained her and forced her to touch his exposed penis. (Tr. 11/15/04 at 96-100.) She also testified that when she made another attempt to leave the engineering room, petitioner locked the door, pulled down her pants, and inserted his finger into her vagina. (*Id.* at 100-01.) There was also testimony from the victim's friend, Stancati, that she heard K.C. screaming from inside the locked room, started to look for help, and then saw K.C. run out of the room while pulling up her clothes. (Tr. at 911-13.) The People also offered testimony from Specht, who examined K.C. at the SANE Center. She testified that the injuries sustained by K.C. were consistent with recent contact with fingernails and digital penetration. (Tr. 11/18/04 at 30-31.)

Although there was conflicting testimony admitted throughout the course of the trial, it is the province of the jury to determine which testimony to afford credibility. *Ware*, 577 F.3d at 447. In this case, a rational trier of fact could have afforded more weight to the credibility of the prosecution's witnesses and could have found petitioner guilty of sexual abuse in the first degree and aggravated sexual abuse in the second degree. Therefore, petitioner's claim that he should be afforded habeas relief because the prosecution failed to prove his guilt beyond a reasonable doubt is denied. The state court determination that the evidence was sufficient to convict petitioner was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the entire record.

b. Physical Injury

Petitioner also argues that the prosecution did not provide sufficient evidence to prove that the complainant suffered physical injury as

required for a conviction of aggravated sexual abuse in the second degree. (Pet. at 3, 6.) Since petitioner has called into question the sufficiency of the evidence introduced at trial to prove the element of a state crime, this Court must look to state law. *See Quartararo*, 186 F.3d at 97.

New York Penal Law Section 130.67(1)(a) states "[a] person is guilty of aggravated sexual abuse in the second degree when he inserts a finger in the vagina, urethra, penis, or rectum of another person causing physical injury to such person." N.Y. Penal Law § 130.67. Under the New York Penal Law, physical injury is defined as "impairment of physical condition or substantial pain." N.Y. Penal Law § 10.00(9). While "petty slaps, shoves, kicks, and the like" do not amount to a physical injury, *Matter of Philip A.*, 400 N.E.2d 358, 359 (N.Y. 1980), physical injury has been found when a victim's pain lasted for several days. *See People v. Thomas*, 640 N.Y.S.2d 503, 504 (App. Div. 1996) (holding that physical injury existed when the victim testified to experiencing stomach pain, nausea, and cramps for several days); *People v. Kim*, 639 N.Y.S.2d 813, 814 (App. Div. 1996) (holding that physical injury existed when a victim had obtained a scraped knee, hip, hand and arm, accompanied by pain and dizziness for two days). Furthermore, New York courts have found that the insertion of a finger into a vagina, resulting in pain for several days, amounts to physical injury. *See People v. Hannah*, 700 N.Y.S.2d 229, 229 (App. Div. 1999); *People v. Painter*, 633 N.Y.S.2d 547, 548 (App. Div. 1995).

Here, the Court finds that there was sufficient evidence during petitioner's trial to find that petitioner inflicted physical injury, as defined by New York Law, on the victim. The victim testified that petitioner forced his finger into her vagina, and that she thereafter experienced intense burning that lasted for two days. (Tr. 11/15/04 at 96-98, 101, 129.)

Furthermore, Specht examined the victim at the Suffolk County SANE Center and testified that she observed two crescent shaped injuries in the victim's vagina and that a few hours after the attack these injuries were still "oozing." (Tr. 11/18/04 at 29-31.) Additionally, Specht testified that K.C. complained of pain when she urinated immediately following the assault and that the bottom portion of K.C.'s genital area was painful to the touch. (*Id.* at 14.)

Accordingly, the Court finds that there was sufficient evidence present at trial for a rational juror to find that physical injury existed, and that the state court's finding that there was sufficient physical injury to convict petitioner of aggravated sexual abuse in the second degree was not contrary to, nor an unreasonable application of, clearly established federal law, and was not an unreasonable determination of the facts in light of the entire record. Thus, petitioner's claim that he is entitled to habeas relief because the prosecution failed to prove physical injury is without merit.

c. Motion To Set Aside the Verdict

Petitioner next claims that the trial court improperly denied his motion to set aside the verdict. (Pet. at 3.) However, as detailed above, this Court finds that there was no error, since the evidence at trial was legally sufficient to sustain petitioner's conviction of sexual abuse in the first degree and aggravated sexual abuse in the second degree. Therefore, petitioner's claim that the trial court improperly denied his motion to set aside the verdict is without merit.

In sum, this Court finds that the evidence adduced at trial was legally sufficient to sustain petitioner's conviction of sexual abuse in the first degree and aggravated sexual abuse in the second degree. Based on the evidence presented at petitioner's trial, a rational trier of fact could find that petitioner was guilty

beyond a reasonable doubt of those charges and that the victim sustained physical injury. Thus, the state trial court's denial of Guerrero's motion to set aside the verdict, and the Appellate Division's determination that there was legally sufficient evidence—including sufficient evidence of physical injury—to convict petitioner, were not contrary to, nor unreasonable applications of, clearly established federal law, nor did the state court make any unreasonable determination of the facts in light of the entire record.

### D. *Batson* Claim

Petitioner claims that his equal protection rights were violated by the prosecutor's use of peremptory challenges against minorities. (Pet. at 10.) More specifically, petitioner claims that the trial court erred when it found that defense counsel did not make the prima facie showing required when it challenged the District Attorney's exercise of a peremptory challenge for a Cuban man, Jose Diaz-Bujan ("Diaz-Bujan"). (*Id.*) Petitioner also claims that the court wrongly inferred that Diaz-Bujan and Guerrero were not of the same recognized group. *Id.* Petitioner claims that this failure to move to step two of the *Batson* analysis, and therefore not require the District Attorney to provide a race-neutral explanation for the removal of the juror, was a violation of petitioner's right to equal protection under the law. *Id.*

The Appellate Division, Second Department, did not unreasonably apply federal law, nor did it reach a conclusion contrary to that reached by the Supreme Court on a question of law. The Appellate Division held that Guerrero "failed to make the requisite prima facie showing of discrimination." *Guerrero*, 844 N.Y.S.2d at 876. Because the Appellate Division's holding was not "contrary to" Supreme Court precedent, the dispositive question is whether it was "objectively unreasonable" for the state court to determine

that petitioner did not make a prima facie showing of discrimination in the use of peremptory challenges. *See Harris v. Kuhlmann*, 346 F.3d 330, 344 (2d Cir. 2003) (holding that the district court incorrectly conducted its analysis under the "contrary to" prong when it should have conducted the analysis under the "unreasonable application" prong where the correct legal principle was identified by the Appellate Division). The Court concludes that the state court's determination was not an unreasonable application of clearly established federal law.

"[W]hen reviewing a *Batson* challenge in the context of a habeas petition, a trial court's conclusion that a peremptory challenge was not exercised in a discriminatory manner is entitled to a presumption of correctness, except, *inter alia*, to the extent that the trial court did not resolve the factual issues involved in the challenge or if the finding is not fairly supported by the record." *Galarza v. Keane*, 252 F.3d 630, 635 (2d Cir. 2001). In *Batson*, the Supreme Court set forth a three-part test for a trial court evaluating whether peremptory challenges were exercised in a discriminatory manner: (1) "a trial court must decide whether the party challenging the strike has made a *prima facie* showing that the circumstances give rise to an inference that a member of the *venire* was struck because of his or her race"; (2) "[i]f the party making the *Batson* challenge establishes a *prima facie* case, the trial court must require the nonmoving party to proffer a race-neutral explanation for striking the potential juror"; and (3) "if the non-moving party proffers a race-neutral explanation, the trial court must determine whether the moving party has carried his or her burden of proving that the strike was motivated by purposeful discrimination." *Id.* at 635-36 (citing *Batson v. Kentucky*, 476 U.S. 79, 96-98 (1986)). "Throughout the *Batson* procedure, the burden of proving that a strike was exercised on an impermissible discriminatory ground remains with the movant." *Messiah v. Duncan*, 435

F.3d 186, 195 (2d Cir. 2006).

In *Batson*, the Court stated that there are three components to establishing a prima facie case. 476 U.S. at 96. First, the moving party must show that the juror is "a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." *Id.* (internal citation omitted). Second, the party bringing the *Batson* challenge may rely on the fact "that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of the mind to discriminate.'" *Id.* (citing *Avery v. Georgia*, 345 U.S. 559, 562 (1953)). Third, the moving party "must show that these facts and any other relevant circumstances raise an inference that the prosecutor used the practice to exclude the veniremen from the petit jury on account of their race." *Id.* The Court in *Batson* also noted that, when deciding whether or not a party that brings a *Batson* challenge has made a prima facie showing, all relevant circumstances should be considered by the trial court. *Id.* In *Powers v. Ohio*, the Court noted that it would be difficult to make a prima facie showing when the potential juror and the defendant are of different races. 499 U.S. 400, 416 (1991). However, the *Powers* Court did not provide any framework by which to analyze such cases. *Id*. To determine whether or not a prima facie showing is made when the defendant is of a different race than the defendant under *Powers*, the Second Circuit employs a "multi-factor analysis." *Tankleff v. Senkowski*, 135 F.3d 235, 249 (1998). The court in *Tankleff* stated:

> In considering whether a defendant has made out a prima facie case under *Powers*, we believe that courts should consider how many members of the cognizable racial group are in the venire panel from which the petit jury is chosen, the pattern of strikes against the

racial group jurors in the particular venire, the prosecutor's statements and questions during selection, as well as any other relevant circumstances.

*Id.*

Here, the trial court properly applied the *Batson* analysis. After the prosecution sought to exercise one peremptory challenge to excuse Diaz-Bujon, defense counsel only said "Judge, I am seeking a neutral reason for the District Attorney's dismissal of juror number sixteen." (Tr. at 404.) When the Judge asked defense counsel if that was her application, defense counsel only stated "Yes, Judge." (*Id.*) When the judge asked defense counsel "In essence you are raising a *Batson* claim in that regard?" again, defense counsel only stated, "Yes, Judge." (*Id.*) After declaring that step one of *Batson* had not been satisfied, the Judge noted that Diaz-Bujon was born in Havana, Cuba. (*Id. at 405.*) In case there was another claim later in the jury selection process, the Judge asked the defense counsel "what is the category, the ethnic sex or gender group that you are basing your Batson challenge on?" (*Id.*) Defense counsel responded "Hispanic, Judge. Hispanic, Your Honor." (*Id.*)

Whether or not Diaz-Bujon is of the same ethnicity or race as the defendant is irrelevant in this case. Defense counsel did not make any attempt to show that Diaz-Bujon was struck from the panel because of his race. Merely asking for a race neutral explanation, without any additional support or argument, is not enough to meet the defendant's burden of making a prima facie case under the *Batson* or *Tankleff. See, e.g.*, *Anderson v. Superintendent of Elmira Corr. Facility*, No. 05-1586-pr, 2008 WL 162842, at *2 (2d Cir. Jan. 18, 2008) (concluding that a state court's rejection of a *Batson* claim when defense counsel insufficiently articulated the reasons for his

challenge before the New York Supreme Court was not an unreasonable application of clearly established federal law); *Cousin v. Bennett*, 511 F.3d 334, 339 n.1 (2d Cir. 2008) ("Petitioner also argues that a *prima facie* case was made because there was no obvious reason for the government to challenge Smith. This argument is unavailing. The absence of an obvious race-neutral reason for excluding a juror is not sufficient to establish a *prima facie* showing of racial motivation. A party's valid reasons for exercising a peremptory challenge are often not apparent without explanation, and explanation is not required unless a *prima facie* showing of an improper motivation has been made." (internal citations omitted)); *United States v. Allison*, 908 F.2d 1531, 1538 (11th Cir. 1990) ("In making out a prima facie case, 'the defendant must point to more than the bare fact of the removal of certain venirepersons and the absence of an obvious valid reason for the removal.'" (quoting *United States v. Young-Bey*, 893 F.2d 178, 179 (8th Cir. 1990))); *Rosario v. Burge*, 542 F. Supp. 2d 328, 340-42 (S.D.N.Y. 2008) (finding no AEDPA violation when state court rejected *Batson* claim due to defense counsel's failure to make out a prima facie case, when she merely requested a non-race-based reason for exclusion of certain jurors); *Butler v. Fischer*, No. 02-CV-5733 (KMK) (KNF), 2008 WL 3338202, at *6-7 (S.D.N.Y. Aug. 8, 2008) (concluding that there was no unreasonable application of clearly established federal law when trial judge did not require that prosecutor articulate a non-race-based reason for exercising peremptory challenge after defense counsel failed to make a prima facie case under *Batson*).

In sum, this Court finds that petitioner has failed to meet his burden to demonstrate that the denial of his *Batson* claim in state court involved an unreasonable application of federal law, or an unreasonable determination of the facts. Accordingly, petitioner's claim on this ground is denied.

### E. Admission of Photograph

Petitioner also contends that he was denied his due process rights when the trial court erred in admitting into evidence a photograph of the complainant wrapped in a blanket, wearing a hospital gown and scratched on the forearm and genitals. (Pet. at 9.) Petitioner argues that, since there was no allegation that the complainant was bruised or scratched during her struggle with petitioner, the prosecution only admitted the photograph in evidence "to inflame engendered sympathy for the complainant and passions of the jury against the [petitioner]." (*Id.*; Reply at 21-22.) This Court disagrees. The Appellate Division rejected petitioner's claim regarding admission of the photograph on the merits; therefore, AEDPA deference applies. This Court concludes that the Appellate Division's ruling was not contrary to, nor an unreasonable application of, clearly established federal law.

A federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). It is well-settled that "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983). *See generally Estelle*, 502 U.S. at 67 ("[H]abeas corpus relief does not lie for errors of state law." (citations omitted)). Instead, for a habeas petitioner to prevail in connection with a claim regarding an evidentiary error, the petitioner must demonstrate that the error deprived him of his right to "a fundamentally fair trial." *Taylor*, 708 F.2d at 891; *see also Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) ("Even erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner 'can show that the error deprived [him] of a fundamentally fair trial.'" (quoting *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988) (internal quotation marks omitted))).

In determining whether a state court's alleged evidentiary error deprived petitioner of a fair trial, federal habeas courts engage in a two-part analysis, examining (1) whether the trial court's evidentiary ruling was erroneous under state law, and (2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial. *See Wade v. Mantello*, 333 F.3d 51, 59-60 & n.7 (2d Cir. 2003); *Ramos v. Phillips*, No. 104-CV-1472-ENV, 2006 WL 3681150, at *6 (E.D.N.Y. Dec. 12, 2006).

Under New York State law, the admission of the photograph in evidence was proper. In New York, demonstrative evidence is generally admissible if it tends "to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered." *People v. Pobliner*, 298 N.E.2d 637, 645 (N.Y. 1973). (citations omitted). In addition, "[p]hotographic evidence should be excluded only if its sole purpose is to arouse the emotions of the jury and to prejudice the defendant." *Id.*

In the case at bar, the trial court did not err when it introduced the photograph in evidence. The prosecution admitted the photograph to show "what [the complainant] was wearing during the examination, the fact that she had a blanket on her at all times that had touched her body and could possibly explain the lack of saliva on her neck." (Tr. 11/18/04 at 47.) Therefore, the photograph served as relevant evidence to provide a possible explanation why the swab taken by Specht from K.C.'s neck did not produce a positive result for saliva. The photograph was also time stamped and, therefore, corroborated the time when the victim arrived at the SANE Center. (Tr. 11/18/09 at 47.) Thus, the purpose of admitting the photograph was not to inflame the passions of the jury; rather, it was relevant to disputed issues in the case. Thus, this Court finds no error in the photograph's introduction

under state law. *See, e.g.*, *Franco v. Walsh*, No. 00 CIV. 8930 (AGS) (JCF), 2002 WL 596355, at *7-8 (S.D.N.Y. Apr. 17, 2002) (finding no habeas relief warranted where state court permitted the prosecutor to display disabled victim to jury because "the extent of the victim's injuries was clearly relevant. In order to prove Attempted Murder in the Second Degree, the prosecution was obligated to establish that the petitioner intended to cause Mr. Smith's death, . . . and the objective results of the beating administered by Mr. Franco were evidence from which the jury could infer such intent." (citations omitted)); *Bilbrew v. Garvin*, No. 97-CV-1422 (JG), 2001 WL 91620, at *10 (E.D.N.Y. Jan. 10, 2001) (holding that trial court did not err in allowing victim to show scars on his neck and shoulder where serious physical injury was one of the elements of the offenses charged); *Moloi v. Riley*, 762 F. Supp. 36, 38-39 (E.D.N.Y. 1991) (holding that introduction of photographs to show complainant's burn scars was proper under state law to rebut defense proffered by petitioner at trial).

Moreover, even assuming the state trial court erred in admitting the evidence, any error did not deprive petitioner of his right to a fair trial. "Due process requires the state courts in conducting criminal trials to proceed consistently with 'that fundamental fairness' which is 'essential to the very concept of justice.'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941)). "The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Id.* (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). Where the unfairly prejudicial evidence does not relate to an essential element of the charged crimes, its erroneous admission will violate due process only when it is "'sufficiently material to

provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Id.* (quoting *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992)); *see also Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (explaining that the evidence must be "crucial, critical, highly significant" (internal quotation marks omitted)). Moreover, even if a constitutional error occurred, it "will merit habeas corpus relief only if it had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Sierra v. Burge*, No. 06 Civ. 14432 (DC), 2007 WL 4218926, at *6 (S.D.N.Y. Nov. 30, 2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)). Further, in assessing materiality, the Court must view the evidence "objectively in light of the entire record before the jury." *Collins*, 755 F.2d at 19.

In the instant case, even assuming *arguendo* that the decision to allow the photograph was erroneous, it did not rise to the level of a constitutional violation and, in any event, was harmless in the context of the entire trial, having no substantial and injurious effect or influence on the jury's verdict. As discussed above, the testimony of Specht, K.C., and the other witnesses for the prosecution provided clear evidence to prove Guerrero's guilt beyond a reasonable doubt. Thus, any error in allowing the photograph into evidence did not rise to an error of constitutional magnitude in light of the entire record and, in any event, was harmless under *Brecht*. *See, e.g.*, *Franco*, 2002 WL 596355, at *8 (holding that the displaying of victim's injuries, even if erroneous, "was not sufficiently material to constitute a due process violation"); *Moloi*, 762 F. Supp. 2d at 38-39 (holding that even if photos of victim were erroneously admitted, the error did not rise to the level of a constitutional violation).

In sum, the state court's admission of a photograph of the complainant, which served probative purposes, was not contrary to, or an unreasonable application of, clearly established federal law. The photograph was properly admitted under state law, and even assuming that the admission of the photograph was erroneous under state law, the admission was not so egregious to rise to the level of constitutional error that warrants habeas relief. Accordingly, this claim does not provide a basis for habeas relief.

### F. Ineffective Assistance of Counsel

Petitioner further contends that he received ineffective assistance of counsel because counsel failed to remove two jurors during the voir dire who allegedly could not be fair and impartial.[9] (Pet. at Continuation of 10[10] at 2.) Specifically, he claims that his attorney's decision not to challenge Juror Davide for cause and his decision not to exercise peremptory challenges to excuse Juror Davide and Juror Herlihy amounted to ineffective assistance of counsel. (*Id.*; Reply at 15-16.) For the reasons set forth below, this Court finds that there is no basis to conclude that the *Strickland* test has been satisfied.

Under the standard promulgated in *Strickland v. Washington*, 466 U.S. 688 (1984), a defendant is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of

---

[9] As a threshold matter, the Court finds this claim to be procedurally barred from review by this Court as discussed *supra*. Even assuming that this claim is reviewable, it is substantively without merit, as set forth below.

[10] In his petition, petitioner has added supplemental pages in between pages 10 and 11. There are 3 pages in total and the first is labeled "Continuation From Page 10." These three supplemental pages will be indicated in the citation as "Pet. at Continuation of 10 at [ ]."

the proceeding would have been different." *Id.* at 694.

The first prong requires a showing that counsel's performance was deficient. However, constitutionally effective counsel embraces a "wide range of professionally competent assistance," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Greiner*, 417 F.3d at 319 (quoting *Rompilla v. Beard*, 545 U.S. 374, 389 (2005)). In assessing performance, a court must apply a "heavy measure of deference to counsel's judgments." *Greiner*, 417 F.3d at 319 (quoting *Strickland*, 466 U.S. at 691). "'A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision,' *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Id.* (citing *Strickland*, 466 U.S. at 690-91). Moreover, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.*

The second prong focuses on prejudice to the defendant. The defendant is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Reasonable probability" means that the errors were of a magnitude such that it "undermines

confidence in the outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "[T]he question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). "'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 691). Moreover, "[u]nlike the determination of trial counsel's performance under the first prong of *Strickland*, the determination of prejudice 'may be made with the benefit of hindsight.'" *Hemstreet v. Greiner*, 491 F.3d 84, 91 (2d Cir. 2007) (quoting *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994)).

This Court proceeds to examine the petitioner's claim, keeping in mind that the habeas petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004). The Court will first address the failure of defense counsel to challenge Juror Davide for cause. The Court will then address the failure of defense counsel to exercise a peremptory challenge on either Juror Davide or Juror Herlihy. The Appellate Division found that petitioner's trial counsel rendered meaningful assistance to petitioner. *Guerrero*, 844 N.Y.S.2d at 877. Thus, AEDPA deference applies. As set forth below, petitioner's claim of ineffective assistance of counsel fails to satisfy the *Strickland* test.

### 1. Failure to Challenge Juror Davide for Cause

Petitioner's claim that counsel's failure to challenge Juror Davide amounted to ineffective assistance of counsel is without merit. Petitioner has failed to show that the decision not to challenge Juror Davide for cause was outside the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

First, although Juror Davide expressed some reservations about his ability to be fair and impartial, the Second Circuit has held that if the juror later expresses during voir dire that he will try to decide the case based on the evidence presented, that assurance will generally be sufficient for both the attorney and the court. *United States v. Towne*, 870 F.2d 880, 885 (2d Cir. 1989). In the case at bar, Juror Davide stated during voir dire that he may have some reservations about his ability to remain fair and impartial due to his employment as a police officer and was subsequently questioned at sidebar, where he expressed some doubts about his ability to be fair and impartial. (Tr. at 123-30.) However, later when questioning resumed in open court, the Judge asked Juror Davide: "Can you base your decisions in this case solely on what you see and hear in this courtroom?" Juror Davide responded "Yes." (*Id*. at 130.) Furthermore, sixteen prospective jurors, including Juror Davide, were asked a series of questions, including one question that stated: "A number of the People's witnesses in this case may be police officers. They will take the same oath as all the other witnesses. The fact that a witness is a police officer does not make that person any more or less credible. Can you all follow my instructions to evaluate a police officer's testimony just like any other witness?" (*Id*. at 147.) In response to this question, all the prospective jurors sitting on the panel, including Juror Davide, responded "Yes." (*Id*.) Given the record, even if defense

counsel challenged Davide for cause, there is no indication that such an application would have been granted. As a threshold matter, employment by a juror as a law enforcement officer is not an automatic ground for dismissal for cause in a criminal case. *See, e.g.*, *People v. Zoccoli*, 732 N.Y.S.2d 416, 417 (App. Div. 2001) ("Contrary to the defendant's contention, the court properly declined to excuse a prospective juror for cause because he was a police officer in the absence of evidence that the prospective juror had a state of mind that [was] likely to preclude him from rendering an impartial verdict based upon the evidence adduced at trial." (quotations and citations omitted)); *People v. James*, 594 N.Y.S.2d 499, 500 (App. Div. 1993) ("The fact that a potential juror is a correction officer does not lead inexorably to an inference that he is inherently biased against criminal defendants." (citation omitted)); *see also United States v. Morales*, 185 F.3d 74, 84 (2d Cir. 1999) (rejecting argument that jurors who were themselves law-enforcement officers or were closely related to law enforcement officers should have been presumed to be partial); *Mikus v. United States*, 433 F.2d 719, 724 (2d Cir. 1970) ("The mere fact of membership on a police force is not presumptively a disqualification for service on a jury in a criminal trial."). Moreover, although initially expressing reservations about his ability to fairly evaluate law enforcement testimony, Davide later responded that he could follow the instruction to evaluate police officer testimony like any other witness. Therefore, under the circumstances, defense counsel's decision not to challenge Davide for cause was not objectively unreasonable because it was unlikely to succeed. In fact, as noted below, defense counsel made precisely such a challenge for cause with respect to another prospective juror with a law enforcement background and his challenge for cause was rejected. (Tr. 554-55.) Thus, based upon the record, there is insufficient basis to conclude that the failure to challenge this juror for cause

was objectively unreasonable.

Furthermore, even assuming *arguendo* that petitioner was able to prove that the decision not to challenge Juror Davide was outside of the range of professional competence, petitioner cannot show that he was prejudiced by counsel's failure to challenge Juror Davide. In order to show prejudice, petitioner must show that the juror was actually biased against him. *See, e.g.*, *Rodriguez v. Breslin*, No. 05-CV-1639 (RRM), 2009 WL 424738, at *9 (E.D.N.Y. Feb. 20, 2009); *see also United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997) (defining actual bias as "bias-in-fact" or "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality"). Petitioner has not pointed to any facts in the record which would indicate that Juror Davide was actually biased against him. Thus, petitioner cannot prove that he has been prejudiced by his counsel's decision not to challenge Juror Davide.

Therefore, since petitioner is unable to show that counsel acted outside of the range of professional competence when he did not challenge Juror Davide, nor that he was prejudiced by the decision not to challenge Juror Davide, petitioner's claim for ineffective assistance of counsel with respect to his failure to challenge Juror Davide for cause must fail.

2. Decision Not To Use Peremptory Challenge on Juror Davide and Juror Herlihy

Petitioner also claims that he received ineffective assistance of counsel because his attorney chose not to exercise a peremptory challenge to excuse Juror Davide and Juror Herlihy. (Pet. at Continuation of 10 at 2.) The Court also finds this claim to be without merit.

As noted above, the only reason petitioner claims Juror Davide should have been excused was because of his initial reservations about his ability to be impartial. (Reply at 15; Pet. at Continuation of 10 at 2.) As to Juror Herlihy, petitioner points to the fact that, after his attorney's challenge for cause with respect to Mr. Herlihy was rejected, defense counsel "failed to immediately follow-up the court's denial with a peremptory challenge discharging the detective." (Reply at 15.)

Petitioner has not articulated a sufficient basis to find the decision not to use peremptory challenges on either juror was outside the wide range of professional competence. *See generally Curkendall v. Mazzuca*, No. 05-CV-688S, 2008 WL 3851820, at *27 (W.D.N.Y. Aug. 15, 2008). Courts in New York have held that "a contention that defense counsel was ineffective for failing to challenge a prospective juror for cause or to exercise a peremptory challenge with respect to that prospective juror does not by itself constitute ineffective assistance." *Jones v. Poole*, No. 05-CV-0886(VEB), 2010 WL 1949599, at *33 (W.D.N.Y. May 13, 2010) (citing *People v. Turck*, 758 N.Y.S.2d 895 (App. Div. 2003)). The exercise of or failure to exercise a peremptory challenge may be considered trial strategy employed by the attorney. *See Curkendall*, 2008 WL 3851820, at *27.

In regards to Herlihy, petitioner has not demonstrated any facts that would indicate that the decision to refrain from exercising a peremptory challenge was not trial strategy. Nor is there any legal support for the petitioner's contention that an attorney must immediately follow up a rejected challenge for cause with the use of one of his peremptory challenges. With respect to Herlihy, although employed by the New York City Police Department, he unambiguously indicated, in response to direct questions, that he could evaluate a police officer's testimony just like that of any other witness and that there was nothing about his employment that would prevent him from being a fair and impartial juror. (Tr. 422-23.) Similarly, with respect to Juror Davide, petitioner has failed to

demonstrate that defense counsel's decision to refrain from using a peremptory challenge was not trial strategy.

The decision not to challenge a juror for cause may amount to a trial strategy when considered as a whole and, therefore, may not amount to ineffective assistance of counsel. *See Rodriguez*, 2009 WL 424738, at *9. In *Rodriguez*, the court held that the decision not to challenge a juror for cause, when that juror expressed that she was "sensitive" to the issue but ultimately stated that she would "try" to remain fair and impartial, did not amount to ineffective assistance of counsel. *Id.* at *3, 9. In that case, the court reasoned that based on the juror's response to a hypothetical question posed during voir dire, the attorney may have reasonably inferred that the juror would be sympathetic to the defense strategy he planned to use at trial. *Id.* at *9.

Similar to *Rodriguez*, in this case, defense counsel posed a series of question to the entire panel of potential jurors during voir dire. (Tr. at 188-215.) After hearing the responses of Juror Davide and Juror Herlihy in light of the responses of all of the prospective jurors, it is likely that defense counsel's decision not to challenge Juror Davide or Juror Herlihy for cause was a strategic decision. In fact, an analysis of the rest of the record lends further support for that conclusion. In particular, defense counsel attempted to challenge for cause other prospective jurors based upon their connection to law enforcement (Tr. 554-55) and, thus, was certainly aware of his ability to make such an application and was certainly aware of the concerns about impartiality that such jurors would generally present to a defendant in a criminal case. However, certain questions that defense counsel asked during voir dire, including a question to Juror Davide, suggest that he was not highly concerned about jurors ability to fairly evaluate police officer testimony in this particular case because there was no eyewitness testimony by

the police and the critical evidence in the prosecution's case was from civilian witnesses. For example, during voir dire, defense counsel asked Juror Davide: "How about if I told you that this case, there are no police eyewitnesses, in fact, the only role that the police took was a role of being given the information by a civilian witness." Similarly, later in voir dire, defense counsel stated the following to the prospective jurors as a group during questioning: "The Judge went through with each one of you folks about the believability of a police officer. If I told you this case didn't matter, the police officer's testimony didn't matter, do you think you would be able to then calculate the credibility of the officers witness a little more easily?" (Tr. 214.) Therefore, it appears from the voir dire, as a whole, that defense counsel made a strategic decision not use peremptory challenges on these two jurors despite their law enforcement background because he viewed the case as hinging on civilian testimony (not law enforcement testimony) and he believed his peremptory challenges were better utilized on other prospective jurors. Petitioner has failed to demonstrate that this strategic decision, under the circumstances of this case, was objectively unreasonable and was constitutionally defective. *See, e.g.*, *Tolliver v. Greiner*, No. Civ. 902-CV-0570 (LEK)(RFT), 2005 WL 2179298, at *6 (N.D.N.Y. Sept. 8, 2005) ("While Petitioner's recitation of the prospective juror's statement is correct, Petitioner neglects to acknowledge that the potential juror thereafter promised that he would follow the judge's instructions on the law and apply them to the facts of the case. In light of those representations, it does not appear to this Court as though defense counsel could have succeeded in having that juror stricken from the panel for cause."); *Chacko v. United States*, No. 96 CR 519 (JGK), 2000 WL 1808662, at *8 (S.D.N.Y. Dec. 11, 2000) (trial counsel not ineffective in seeking to remove juror that assured court that she "would be able to decide the case on the facts and the law").

Although one could second-guess the strategic decision with hindsight, it does not rise to the level of a constitutional violation under *Strickland*. As one court has noted, "the old saying among trial lawyers is that there are always three "trials": the one you plan, the one you try, and the one you wish you had tried." *Kappell v. United States*, No. 2:07-CV-65, 2008 WL 2559264, at *8 (W.D. Mich. June 20, 2008).

Additionally, if a petitioner failed to demonstrate that he requested that his attorney exercise a peremptory challenge for particular jurors, the petitioner is deemed to have acquiesced to he attorney's decision not to do so. *See, e.g.*, *Curkendall*, 2008 WL 3851820, at *27. In the case at bar, there is no indication on the record that petitioner requested that his attorney exercise a peremptory challenge on Juror Davide or Juror Herlihy. Therefore, he acquiesced to his attorney's decision not to exercise a peremptory challenge.

Furthermore, as discussed above, in order to show prejudice, the petitioner must show that the juror was actually biased against him. The petitioner has not pointed to any facts in the record which would indicate that Juror Davide or Juror Herlihy was actually biased against him. Therefore, even assuming *arguendo* that petitioner was able to prove that his attorney's decision was outside the wide range of professional competence, petitioner was not prejudiced by the decision not to exercise peremptory challenges on Juror Davide or Juror Herlihy. Absent evidence of partiality or bias by the jurors that counsel did not strike, the Court concludes that counsel's failure to exercise peremptory challenges on Juror Davide and Juror Herlihy as counsel's trial strategy which, even if erroneous, did not rise to the level of constitutional error. *See, e.g.*, *Encarnacion v. McGinnis*, No. 01-cv-0586 (GLS-VEB), 2008 WL 795000, at *12 (N.D.N.Y. Mar. 24, 2008) ("In any event, the decision not to seek the removal of the potential jurors through the exercise of a peremptory challenge is generally a strategic choice on counsel's part, which does not rise to the level of constitutional error."); *Curkendall*, 2008 WL 3851820, at *27 (finding no Sixth Amendment claim when "the record is devoid of any evidence rebutting the presumption of impartiality of any of these jurors sufficient to warrant habeas relief"); *Diaz v. Conway*, No. 04 Civ. 5062(RMB)(HBP), 2008 WL 2461742, at *28 (S.D.N.Y. June 17, 2008) (rejecting ineffective assistance argument in habeas petition based on failure to use peremptory challenges on three prospective jurors with connections to law enforcement "because petitioner offers nothing other than speculation regarding these jurors ability to be impartial"); *Cook v. Moore*, No. 8:02-CV-1375-T-23MAP, 2005 WL 2416038, at *5-7 (M.D. Fla. Sept. 30, 2005) (rejecting habeas claim that trial counsel was ineffective in failing to exercise peremptory challenges to exclude three prospective jurors who stated in voir dire that they would believe police officers over inmates if there was a conflict in the testimony); *Doleo v. Reynolds*, No. 00-CV-7927, 2002 WL 922260, at *4-5 (S.D.N.Y. May 7, 2002) ("Strategies as to the exercise of peremptories are matters of counsel's intuition, and do not rise to the level of constitutional error."); *see also Tolliver*, 2005 WL 2179298, at *6 (collecting cases).

In sum, this Court concludes that there is no basis to grant habeas relief based on the alleged ineffective assistance of trial counsel and, thus, such claim is denied on the merits.

## G. Missing Witness Charge

Next, petitioner claims that habeas relief is appropriate because the trial court failed to issue a missing witness charge for Rouff.[11]

---

[11] As a threshold matter, the Court finds this claim to be procedurally barred from review by this Court as discussed *supra*. Even assuming that this claim is reviewable, it is substantively without merit, as

(Pet. at Continuation of 10 at 1.) Specifically, petitioner claims that since Rouff was the lead detective assigned to petitioner's case, Rouff was under the prosecution's control and would have given material, non-cumulative, testimony. (*Id.*) The Appellate Division found that the County Court properly denied Guerrero's request for a missing witness charge on the ground that the request was untimely. *Guerrero*, 844 N.Y.S.2d at 876. The Court finds that petitioner's claim is not cognizable for review in a habeas petition. Nonetheless, the Appellate Division's ruling was proper under state law, and, in any event, it was within the trial court's discretion to deny Guerrero's request for such a charge.

As a threshold matter, the failure to provide a missing witness charge is a matter of state law for which habeas relief is unavailable. Guerrero points "to no clearly established Supreme Court precedent requiring a trial court to instruct the jury with respect to a missing witness. At any rate, '[w]hether a missing witness charge should be given lies in the sound discretion of the trial court.'" *Morales v. Strack*, No. 99-CV-1617, 2003 WL 21816963, at *4 (E.D.N.Y. July 3, 2003) (quoting *Reid v. Senkowski*, 961 F.2d 374, 377 (2d Cir. 1992)); *see also Kirkby v. Filion*, 644 F. Supp. 2d 299, 307 (W.D.N.Y. 2009) ("Kirkby's missing witness charge claim raises only an issue of state law that cannot justify federal habeas relief.").

A "missing witness charge invites the jury to draw an adverse inference against a party that fails to call a witness whose 'production . . . is peculiarly within [its] power.'" *United States v. Gaskin*, 364 F.3d 438, 463 (2d Cir. 2004) (quoting *United States v. Mittelstaedt*, 31 F.3d 1208, 1216 (2d Cir. 1994)). Further, as the Second Circuit has explained, "[b]ecause we recognize that 'an aura of gamesmanship' frequently accompanies requests for missing witness charges, we afford [trial] judges

considerable discretion in deciding when they should and should not be given." *Gaskin*, 364 F.3d at 463 (citations omitted); *see also Reid*, 961 F.2d at 377 (noting that decision to issue missing witness charge "lies in the sound discretion of the trial court" (citation and quotation marks omitted)). Moreover, "[l]ike the failure to give any other jury instruction, the failure to issue a missing witness instruction does not raise a constitutional issue and cannot serve as the basis for federal habeas relief unless the failure 'so infected the entire trial that the resulting conviction violated due process.'" *Kloskin v. Conway*, 501 F. Supp. 2d 429, 444 (W.D.N.Y. 2007) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

To obtain a missing witness charge under New York State law, a defendant must demonstrate three factors regarding the witness in question:

> (1) the witness had knowledge material to the trial; (2) the witness was expected to give noncumulative testimony favorable to the party against whom the charge is sought; and (3) the witness is available to the party who would be expected to call the witness.

*McCrone v. Brown*, No. 9:07-cv-00077-JKS, 2008 WL 724234, at *9 (N.D.N.Y. Mar. 17, 2008) (citing *People v. Savinon*, 791 N.E.2d 401, 404 (N.Y. 2003)).

In the case at bar, after both sides rested, the trial court asked the attorneys if there were any requests for charges to the jury, and petitioner's counsel asked for the missing witness charge. (Tr. at 1045.) However, after both the defense counsel and the prosecution made their arguments to the court, the trial court denied the request because petitioner's attorney waited until both sides had rested, and, therefore, his motion was untimely. (*Id.* at

_____

set forth *infra*.

1044-51.) Defense counsel then reminded the judge that he had informed the judge that he would be requesting a missing witness charge the previous Friday. (*Id*. at 1051.) The trial court acknowledged that defense counsel brought the issue to the judge's attention the previous Friday but noted that it had been brought to the judge's attention off the record and after both sides had rested. (*Id*. at 1052.) The trial court thus deemed the application untimely and denied the request. (*Id*.) The trial judge also denied the motion to charge the jury with a missing witness charge because "the information the detective has, in the [c]ourt's view, is not a material issue in the case." (*Id*. at 1051.)

Based upon the record, it is clear that the trial court judge properly denied the missing witness charge as untimely, and, therefore, the petitioner's claim is without merit under state law. According to the New York Court of Appeals,

> [i]n some instances, this information may be available prior to trial; at other times, it may not become apparent until there has been testimony of a witness at trial. In all events, the issue must be raised as soon as practicable so that the court can appropriately exercise its discretion and the parties can tailor their trial strategy to avoid "substantial possibilities of surprise."

*People v. Gonzalez*, 502 N.E.2d 583, 586 (N.Y. 1986). (citation omitted). It is well established within the Appellate Division, Second Department, that, if an attorney raises the issue of a missing witness charge after both sides have rested, the motion is untimely. *See, e.g.*, *People v. McCloud*, 758 N.Y.S.2d 516, 516 (App. Div. 2003); *People v. Catoe*, 582 N.Y.S.2d 29, 29 (App. Div. 1992). Therefore,

the request made by attorney's counsel for a missing witness charge was properly denied because it was untimely. Thus, petitioner's claim for habeas relief on this ground is without merit.

Even assuming *arguendo* that the request for a missing witness charge for Rouff was timely, given the vast amount of discretion afforded the trial court judge's decision whether to issue a missing witness charge, the request was also properly denied on its merits. The defense argued that Rouff had knowledge of a material issue because he could testify to what the witnesses who testified at trial told him on the day of the attack. (Tr. at 1046.) The trial court judge held that Rouff's testimony was not material because "[t]he detective took statements which have already been received in evidence, sort of was an after the fact collector." (*Id*. at 1051.) Petitioner presents no facts in his petition to this court which would suggest that had Rouff testified, he would have testified to a material issue. Therefore, this Court finds no reason to disrupt the trial court's decision that Rouff's testimony was not material.

In any event, even if there was a violation of state law, there is no basis for concluding that such error was of such constitutional magnitude that it warrants habeas relief. It is entirely speculative to suggest that the prosecutor's failure to call Rouff as a witness, or the failure by the court to give a missing witness charge, had any impact on the trial. *See, e.g.*, *Davis v. Smith*, No. 9:06-CV-1389 (JKS), 2009 WL 236506, at *7 (N.D.N.Y. Feb. 2, 2009) ("Even if state law had called for the missing witness charge, its absence certainly did not so infect the entire trial as to deny Petitioner due process where, as here, the prosecutor's comments during his opening statement were equivocal, defense counsel was permitted to comment on the absence of any eye-witness testimony during summation, and the jury was instructed to limit itself to the

evidence actually presented."); *Toland v. Walsh*, No. 9:04-CV-0773 (GLS), 2008 WL 65583, at *14-15 (N.D.N.Y. Jan. 4, 2008) (denying habeas relief where possibility that missing witness would give favorable testimony was "based upon nothing other than mere conjecture" and "federal habeas relief cannot be granted upon claims that are rooted in speculation"); *Brown v. Conway*, No. CV-06-3555, 2007 U.S. Dist. LEXIS 85924, at *12 (E.D.N.Y. Nov. 19, 2007). (denying habeas relief in part because "failure to give a missing witness charge will rarely support reversal or habeas relief since reviewing courts recognize the aura of gamesmanship that frequently accompanies requests for a missing witness charge as to which the trial judge will have a surer sense than any reviewing court" (citation and quotation marks omitted)). "Where, as here, the alleged error is one of omission, it 'is less likely to be prejudicial than a misstatement of the law,' thereby making the petitioner's 'burden . . . especially heavy.'" *Crews v. Herbert*, 586 F. Supp. 2d 108, 114 (W.D.N.Y. 2008) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)). In the instant case, petitioner has not met that burden.

Moreover, in his summation, petitioner's trial counsel noted that the jury did not hear from the arresting officer. (Tr. at 1082.) Thus, by implying that Rouff would have been able to account for any inconsistencies between the witnesses' signed statements and their testimony, counsel further alleviated any potential error in the court's failure to issue a missing witness charge. *See, e.g.*, *Brown v. Spitzer*, No. 05 Civ. 1553 (BMC), 2007 WL 2406870, at *8 (E.D.N.Y. Aug. 21, 2007) ("[P]etitioner's trial counsel was granted the right to argue in closing that the jury should draw an adverse inference from the failure to call [the witness], for whatever that was worth, and the cases have recognized that counsel's closing argument as to an allegedly missing witness cures the failure to charge, if one would be required." (citations omitted)). In

addition, habeas relief also would not be warranted on this ground given the compelling proof of defendant's guilt, discussed *supra*.

In sum, after careful review of the state court record, there is no basis for the court to conclude in this case that the trial court's rejection of the missing witness charge request was erroneous under state law, much less that the court violated petitioner's federal due process rights by failing to give the charge. The state court's ruling was not contrary to, nor an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the entire record. Thus, habeas relief on this ground is unwarranted.

## H. Harsh and Excessive Sentence

Petitioner contends that the sentence imposed on him for the crimes he was convicted of—sexual abuse in the first degree and aggravated sexual abuse in the second degree—was excessive and, therefore, cruel and unusual punishment.[12] (Pet. at Continuation of 10 at 2.) Specifically, petitioner claims that in comparison to his original plea offer of six months that was offered prior to trial, a sentence of five years for the conviction of sexual abuse in the first degree and eight years for the conviction of aggravated sexual abuse in the second degree, to be served concurrently, is excessive. (*Id*. at 2-3.) Petitioner also claims that in light of the fact that he was fifty years old at the time of sentencing, had no prior criminal convictions, owns a home, and has a family, his sentence was unusual, harsh, and excessive. (*Id*. at 3.) The Appellate Division found that petitioner's sentence was not excessive. *Guerrero*, 844 N.Y.S.2d at 877. Therefore, AEDPA deference applies. The Court concludes that

---

[12] As discussed by this Court *supra*, this claim is procedurally barred from review by this Court. Even assuming that this claim is reviewable, it is substantively without merit, as set forth below.

the Appellate Division's determination that petitioner's sentence was not harsh and excessive was not contrary to, or an unreasonable application of, clearly established federal law.

For the purpose of habeas review, "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *see also Santiago v. Riley*, 92-cv-2302 (DRH), 1993 WL 173625, at *4 (E.D.N.Y. May 14, 1993) ("Where the sentence imposed by a state trial judge is within the statutorily prescribed range, the constitution is not implicated and there is no federal question for habeas corpus review." (citation omitted)); *Underwood v. Kelly*, 692 F.Supp. 146, 152 (E.D.N.Y. 1988), *aff'd*, 875 F.2d 857 (2d Cir. 1989).

In this case, petitioner was convicted of two violent felonies and was sentenced to a total of eight years of imprisonment. Sexual abuse in the first degree is a Class D Violent Felony. N.Y. Penal Law § 70.02(1)(c). Aggravated sexual abuse in the second degree is a Class C Violent Felony. N.Y. Penal Law § 70.02(1)(b). According to New York Penal Law Section 70.02(3)(b), for a Class C Violent Felony "the term must be at least three and one-half years and must not exceed fifteen years." N.Y. Penal Law § 70.02(3)(b). Additionally, according to New York Penal Law Section 70.00(3)(c), for a Class D Violent Felony "the term must be at least two years and must not exceed seven years." New York Penal Law § 70.02(3)(c). Therefore, since petitioner's sentence was within the statutorily prescribed range, there is no federal question for habeas review.[13]

Furthermore, petitioner's arguments that the sentence is greater than that offered during plea negotiation is not a cognizable ground for relief. *See Walker v. Walker*, 259 F. Supp. 2d 221, 226 (E.D.N.Y. 2003) ("[T]he mere fact that the sentence imposed following trial is greater than the offer made during plea negotiations, does not indicate that a petitioner has been punished for exercising his right to proceed to trial.").

In sum, the Court finds that the Appellate Division's conclusion that petitioner's sentence was not excessive was not contrary to, nor an unreasonable application of, clearly established federal law. Therefore, petitioner's application for habeas corpus relief on this ground is denied.

## I. Alternate Juror

Petitioner claims that the trial court did not keep the alternate jurors strictly separated from the jury panel during deliberations, and therefore, violated New York Criminal Procedure Law Section 270.30. (Pet. at 3; Reply at 22.) The Appellate Division found that this claim, raised in petitioner's supplemental *pro se* brief, was without merit. *Guerrero*, 844 N.Y.S.2d at 877. The Court finds that this conclusion was proper under AEDPA.

New York Criminal Procedure Law Section 270.30(1) provides in relevant part that:

> [a]fter the jury has retired to deliberate, the court must either (1) with the consent of the defendant and the people, discharge the alternate jurors or (2) direct the alternate jurors not to discuss the case and must further direct that they be kept

---

[13] In any event, even if the Court could review the sentence within the range prescribed by state law, the Court would find no basis to conclude that petitioner's sentence was grossly disproportionate to the crime committed so as to violate the Eighth Amendment given the nature of the criminal

activity that was the subject of the conviction in the instant case.

separate and apart from the regular jurors.

N.Y. Crim. Proc. Law § 270.30 (McKinneys 2002). In the case at bar, the remaining alternate juror was kept separate from the deliberating jury. (Tr. at 1213-14, 1242, 1244, 1255.) After the jurors began their deliberations, the only time the alternate juror was seated with the jury was during a brief explanation of the law and requested read backs of testimony. (*Id*. at 1219-22, 1242-43.) There is absolutely no indication in the record that during that time the jurors and the alternate juror deliberated with one another. In addition, there is a strong presumption that jurors follow the trial court's instructions. *People v. Meekins*, 828 N.Y.S.2d 83, 86 (App. Div. 2006). In the case at bar, the trial court instructed all of the jurors, several times throughout the trial, that they were not to discuss the case unless they were in the jury room deliberating. (Tr. at 1211, 1230-33, 1245-48.) Petitioner has presented no evidence that would rebut the presumption that the jurors followed the judge's instructions.

Furthermore, the trial court's actions did not violate or unreasonably apply clearly established federal law. In *United States v. Olano*, 507 U.S. 725 (1993), the United States Supreme Court held that the presence of alternate jurors in the jury room during deliberations, who had been instructed that they could sit in on the deliberations but were not to participate, did not affect substantial rights of the defendant, and therefore did not constitute plain error under Federal Rule of Civil Procedure 52(b). *Id.* at 741. Similarly, here, there is no evidence that petitioner's substantive rights were violated. Accordingly, the Court concludes that habeas relief is unavailable to petitioner because the state court's decision, that petitioner's claim that the alternate juror deliberated with the jury in violation of New York Criminal Procedure Law Section 270.30 was without merit, was not contrary to, nor an unreasonable application of

clearly established federal law. *Cf. United States v. Burden*, 600 F.3d 204, 226 (2d Cir. 2010) (finding integrity of prosecution was not jeopardized when deliberating jury was allowed to eat lunch with alternate jurors, because "the district court instructed the deliberating jurors not to deliberate at any time that they were outside of the jury room, and particularly not with alternate jurors"); *West v. Ricks*, No. 3:06-cv-1112 (CFD), 2010 WL 96540, at *7-10 (D. Conn. Jan. 7, 2010) (finding no violation of clearly established federal law regarding each of the three instances of alleged juror misconduct: when alternates participated in the selection of the jury foreperson; when the alternates were present before deliberations and a juror suggested that the jury should take a straw poll; and when one alternate spoke on the phone with a juror during deliberations).

\* \* \*

In sum, after carefully reviewing the merits of all of petitioner's claims, the Court concludes that the state court's decisions on his claims were not contrary to, nor an unreasonable application of, clearly established federal law, nor were they based on an unreasonable determination of the facts in light of the evidence presented in state court, and all of the claims are without merit.

### III. CONCLUSION

For the foregoing reasons, petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Petitioner has failed to point to any state court ruling that was contrary to, or an unreasonable application of, clearly established federal law, or that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Moreover, petitioner has failed to demonstrate that an evidentiary hearing is warranted on any of the issues that he has raised because he has failed to indicate any

factual issues that need resolution through a hearing.

Accordingly, the instant habeas petition is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: June 21, 2010
   Central Islip, NY


* * *


Petitioner is proceeding *pro se*. Respondent is represented by Guy Arcidiacono and Karla Lato, Assistant District Attorneys, on behalf of Thomas J. Spota, District Attorney of Suffolk County, Criminal Courts Building, 200 Center Drive, Riverhead, New York 11901.